IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| KEITH T. HANSFORD, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 10-1351 Electronically Filed |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.  Introduction

Plaintiff Keith T. Hansford ("Hansford") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f].  Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment based on the record developed during the administrative proceedings.  ECF Nos. 9 & 11.  After careful consideration of the Commissioner's decision, the memoranda of the parties, and the entire evidentiary record, the Court is convinced that further administrative proceedings are necessary in this case.  Therefore, the motion for summary judgment filed by the Commissioner (*ECF No. 11*) will be denied, and the motion for summary judgment filed by Hansford (*ECF No. 9*) will be denied to the extent that it requests an immediate award of benefits, but granted to the extent that it seeks a vacation of the Commissioner's administrative

1

decision, and a remand for further proceedings. The decision of the Commissioner will be vacated, and the case will be remanded to him for further administrative proceedings consistent with this opinion.[1]

## II.    Procedural History

Hansford protectively applied for DIB and SSI benefits on June 7, 2007, alleging disability as of January 1, 2005. R. 13, 106, 112, 172. The applications were administratively denied on January 11, 2008. R. 50, 55. Hansford responded on January 29, 2008, by filing a timely request for an administrative hearing. R. 60. On September 30, 2009, a hearing was held before Administrative Law Judge James Bukes (the "ALJ"). R. 23. Hansford, who was represented by counsel, appeared and testified at the hearing. R. 26-44. Mary Beth Kopar ("Kopar"), an impartial vocational expert, also testified at the hearing. R. 44-46. In a decision dated November 3, 2009, the ALJ determined that Hansford was not "disabled" within the meaning of the Act. R. 10-22. The Appeals Council denied Hansford's request for review on August 26, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 1. Hansford commenced this action on October 14, 2010, seeking judicial review of the Commissioner's decision. ECF Nos. 1 & 2. Hansford and the Commissioner filed cross-motions for summary judgment on March 14, 2011. ECF Nos. 9 & 11. These motions are the subject of this memorandum opinion.

## III.    Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision

---

[1] The fourth sentence of 42 U.S.C. § 405(g) provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress clearly has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's

4

decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.  The ALJ's Decision

In his decision, the ALJ determined that Hansford had not engaged in substantial gainful activity subsequent to his alleged onset date. R. 15. Hansford was found to be suffering from diabetes mellitus, major depressive disorder, generalized anxiety disorder, schizoaffective disorder, hypertension and psoriasis. R. 15-16. His diabetes mellitus, major depressive disorder, generalized anxiety disorder and schizoaffective disorder were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), while his hypertension and psoriasis were deemed to be "nonsevere." R. 15-16. The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16-17.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Hansford's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he requires a sit/stand option. Mr. Hansford is limited to simple instructions, must avoid work in close coordination or close proximity to others, must avoid crowds or groups of people, and must avoid changes in the work setting. The claimant is unable to engage in more than simple decision-making and must avoid assembly line pace production work.

R. 17. Hansford had past work experience as a security guard. R. 141. Kopar classified Hansford's previous job as a "semi-skilled"[2] position at the "light"[3] level of exertion. R. 45. Because an individual with the limitations identified by the ALJ could not perform semi-skilled work, it was determined that Hansford could not return to his past relevant work as a security guard. R. 21, 45.

Hansford was born on December 2, 1964, making him forty years old on his alleged onset date and forty-four years old on the date of the ALJ's decision. R. 26. He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). He had the equivalent of a high school education and an ability to communicate in English. R. 21, 26-27, 154, 160; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Hansford could work as an order caller, a marker, or a ticket seller. R. 22. Kopar's testimony

---

[2] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[4] R. 45.

**V.    Discussion**

Hansford maintained a part-time job as a van driver subsequent to his alleged onset date. R. 156. He testified at the hearing that, on a typical weekday during the school year, he was responsible for transporting a single child to and from school. R. 29, 35. The ALJ relied on Hansford's maintenance of a part-time job to reject some of the alleged functional limitations identified by his treating healthcare providers. R. 20. Hansford argues that the ALJ was not entitled to reject the opinions of his treating sources, and that his ability to perform the duties of a part-time job was not indicative of an ability to engage in substantial gainful activity. ECF No. 10 at 4-13. The Commissioner contends that the ALJ correctly determined that Hansford was capable of working on a full-time basis. ECF No. 12 at 13-15. The competing arguments raised by the parties in this case can only be understood by reference to the medical evidence contained in the documentary record.

Dr. Charles M. Cohen performed a consultative psychiatric evaluation of Hansford on December 12, 2007. R. 298-304. After reporting that Hansford had a "guarded" prognosis, Dr. Cohen made the following observations:

> This is a difficult call from a disability point of view. This man reports chronic depression. He does appear to be letting his grooming go. He reports that he is going to therapy and taking medications. He reports psychotic-like symptoms in the past, but denies them currently, though there does appear to be still some paranoid ideation. His concentration was fairly good. My impression is that this man appears to be rather seriously depressed. My overall impression is that currently he does not appear competent to come to work on time, to deal

---

[4] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

effectively with authority figures or peers, or concentrate consistently enough to perform even simple repetitive task [sic].

R. 303. Dr. Cohen indicated that Hansford had "marked"[5] limitations in his abilities to understand, remember and carry out detailed instructions, to interact appropriately with supervisors, co-workers and members of the general public, and to respond appropriately to work pressures and changes in usual and routine work settings. R. 299. Hansford was found to be "moderately"[6] limited in his abilities to understand, remember and carry out short, simple instructions and to make judgments concerning simple work-related decisions. R. 299.

Dr. Jan Melcher, a nonexamining medical consultant, opined on December 19, 2007, that Hansford was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." R. 307. She refuted Dr. Cohen's opinion of disability. R. 307. Dr. Melcher further indicated that while Hansford was hampered by some "moderate" limitations, he had no "marked" limitations. R. 305-306, 321.

On December 20, 2007, Dr. Malcolm Harris performed a consultative physical examination of Hansford. R. 326-332. Based on the findings of his examination, Dr. Harris reported that Hansford could frequently lift or carry objects weighing up to twenty pounds and occasionally lift or carry objects weighing up to twenty-five pounds. R. 329-330. Hansford's sitting, standing and walking abilities were deemed to be unlimited. R. 329-330. No other physical, postural or environmental limitations were found. R. 331. Rebecca Johns ("Johns"), a nonexamining medical consultant, asserted on January 10, 2008, that Hansford was capable of performing an unlimited range of "light" work activities. R. 333-339.

---

[5] A "marked" limitation constitutes a "serious limitation" in which the relevant "ability to function is severely limited but not precluded." R. 298.

[6] A "moderate" degree of limitation in a given area is consistent with a finding that an individual "is still able to function satisfactorily" in that area. R. 298.

Hansford sought mental health treatment from Joseph Murdoch ("Murdoch"), a therapist affiliated with Mercy Behavioral Health ("Mercy"). R. 340-481. The records contains documentary evidence of Hansford's "individual psychotherapy" sessions between January 23, 2008, and June 30, 2009. R. 340-481. During his first session with Murdoch, Hansford expressed frustration with his inability to sell his house, which he viewed to be a financial burden. R. 395. On February 12, 2008, Hansford stated that his part-time job was not providing him with enough money to pay his water bill. R. 391. He apparently started to look for another job. Nonetheless, he told Murdoch on February 26, 2008, that he did not believe that his "health" would permit him to satisfy the requirements of a full-time position. R. 387.

Hansford subsequently spoke with Patty Krebs ("Krebs"), an employment specialist, in order to find another job. R. 381, 383. His mood "improved significantly" on April 8, 2008, when he learned that Krebs had found a "good lead" for him. R. 377. Hansford did not get the job. On April 29, 2008, he told Murdoch that he "did not care" about the lost employment opportunity. R. 372. Murdoch later attributed Hansford's depression to his unsuccessful job search. R. 370. Murdoch reported on June 10, 2008, that Hansford had not been keeping in touch with Krebs. R. 360. Three months later, Hansford expressed a renewed interest in speaking with Krebs about employment opportunities. R. 342. On October 15, 2008, Hansford told Murdoch that he had "interviewed for a good job," but that he was not "physically healthy enough" to get it. R. 340. Hansford stated on November 5, 2008, that his "anxiety" was hindering his job search. R. 480. Later that month, Murdoch indicated that Hansford's depression had prevented him from capitalizing on "several leads." R. 477. In December 2008, Hansford started to miss work even though he could not afford to do so. R. 475. His desperate

9

financial situation prevented him from traveling to New Jersey to spend Christmas with his family.  R. 471, 473.

Hansford continued to seek treatment at Mercy in 2009.  On January 7, 2009, he told Murdoch that he was too depressed to pursue "job leads."  R. 469.  Hansford visited his relatives in New Jersey after suffering a panic attack.  R. 465.  He apparently secured a janitorial job in February 2009.  Nevertheless, he was quickly fired because the hiring employer was dissatisfied with his performance.  R. 455, 457.  Hansford stated on March 11, 2009, that his "increased anxiety" had caused him to develop an ulcer.  R. 453.  One week later, Murdoch opined that Hansford's failure to follow up with Krebs was causing him to miss job opportunities.  R. 451.  Hansford was evidently fired from another job after working only one day.  R. 449.  On April 1, 2009, he expressed a desire to find a better job and sell his house.  R. 447.

Dr. Renata Jurczak, a psychiatrist affiliated with Mercy, examined Hansford on April 8, 2009.  Hansford exhibited no signs of suicidal or homicidal ideation.  R. 397.  Dr. Jurczak noted that Hansford had been performing the duties of a part-time job during the day and looking for another job at night.  R. 397.

Murdoch observed on April 15, 2009, that Hansford had not been cooperating with the Mercy personnel involved with his job search.  R. 445.  Hansford began to miss appointments that he had scheduled with Krebs.  R. 441.  On April 22, 2009, Murdoch reported that Hansford was refusing to adjust his medications for the purpose of making them more effective.  R. 441.  The next week, Murdoch noted that Hansford's employment prospects were "in limbo."  R. 439.  Murdoch later agreed to put Hansford in touch with a "new job coach."  R. 437.  In a treatment note dated May 13, 2009, Murdoch stated that while Hansford was blaming his lack of motivation to find a job on his depression, he was actually depressed precisely because he could

not get a better job. R. 435. It was further noted that Hansford had been missing appointments with his physician. R. 435.

On May 29, 2009, Murdoch described Hansford as a "lost soul." R. 433. He opined that Hansford had failed to make the "significant changes" that were necessary in order to secure gainful employment. R. 433. Hansford told Murdoch on June 10, 2009, that he was not physically or mentally capable of working. R. 429. On June 24, 2009, Hansford stated that he was hoping to obtain Social Security disability benefits because he could no longer tolerate his part-time job. R. 427. Six days later, Hansford asked Murdoch to complete a questionnaire in support of his applications for DIB and SSI benefits. R. 425. In a questionnaire dated July 1, 2009, Murdoch indicated that Hansford was "[u]nable to meet competitive standards" in various work-related areas, and that he had "[n]o useful ability" to "[s]et realistic goals or make plans independently of others." R. 484-485. Murdoch further reported that if Hansford were to be given a full-time job, his mental condition would force him to miss more than four days of work per month. R. 485.

Hansford's primary care physician, Dr. Lakshmi Reddy, completed a questionnaire detailing Hansford's work-related limitations on July 13, 2009. R. 486-489. Dr. Reddy opined that Hansford could frequently lift or carry objects weighing up to fifty pounds, and that he could sit for "at least" six hours (and stand or walk for "less than" two hours) during the course of an eight-hour workday. R. 487-488. She indicated that Hansford could never tolerate exposure to solvents, cleaners and chemicals. R. 489. Dr. Reddy further reported that Hansford was incapable of performing the duties of even low-stress jobs, and that his impairments would force him to miss more than four days of work per month if he were to secure a full-time position. R. 487, 489. She reiterated many of these findings in a subsequent questionnaire dated July 27,

11

2009. R. 505-508. In the second questionnaire, however, Dr. Reddy indicated that Hansford could sit, stand or walk for "less than" two hours during the course of an eight-hour workday. R. 506. This finding differed from her earlier representation that Hansford could sit for "at least" six hours per workday. R. 487, 506.

In a questionnaire dated July 15, 2009, Dr. Jurczak reported that Hansford was "[u]nable to meet competitive standards" in the areas of remembering work-like procedures and maintaining regular attendance within customary tolerances. R. 503. Several other "serious" limitations were identified by Dr. Jurczak. R. 503-504. Like Murdoch and Dr. Reddy, Dr. Jurczak opined that Hansford would miss more than four days of work per month if he were to obtain a full-time job.[7] R. 504.

Dr. Harris' examination report, Johns' consultative opinion and Dr. Reddy's first questionnaire provided the ALJ with an adequate basis to conclude that Hansford was *physically* capable of performing the duties of a "light" job. R. 19-20, 326-339, 486-489. In determining that Hansford was *mentally* capable of performing the duties of the jobs identified by Kopar, however, the ALJ credited the opinion of a nonexamining medical consultant over the opinions of a consultative examiner, a treating psychiatrist and a treating therapist. R. 20, 298-309, 321, 482-489, 501-508. The ALJ afforded "great probative weight" to Dr. Melcher's expert opinion because he found it to be "consistent with the medical evidence as a whole." R. 20. He rejected Dr. Cohen's examination report as "a one-time snapshot" of Hansford's condition. R. 20. The ALJ stated that Dr. Reddy's "speculation as to [Hansford's] employability carrie[d] no probative weight." R. 20. The opinions of Murdock and Dr. Jurczak were "accorded little probative

---

[7] When questioned at the hearing about absences from his part-time job, Hansford testified that he typically missed only two days of work per month. R. 39-40.

12

weight." R. 20. The ALJ declared that several of the limitations identified by Hansford's treating sources were contradicted by his "maintenance of part-time employment." R. 20.

Hansford assails the ALJ's decision to credit the opinion of a nonexamining medical consultant over the opinions of treating and examining sources. ECF No. 10 at 4-9. The United States Court of Appeals for the Third Circuit has admonished that it is generally inappropriate for the Commissioner to reject the opinion of a treating healthcare provider solely on the basis of a report supplied by a nonexamining medical consultant. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). The applicability of this rule is clear in the instant case, since the opinions expressed by the treating sources were consistent with the report of a consultative examiner. *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)(recognizing the unique level of expertise that consultative examiners bring to the adjudicatory process). Furthermore, courts have recognized that psychiatrists and other mental-health professionals cannot effectively formulate medical opinions solely by reference to "objective findings derived from objective clinical tests." *Sheehan v. Metropolitan Life Insurance Co.*, 368 F.Supp.2d 228, 255 (S.D.N.Y. 2005). For this reason, the opinion of a psychiatrist who has never had an opportunity to evaluate an individual's "subjective symptoms" is usually of little probative value.[8] *Id.* It is also worth noting that Murdoch, Dr. Reddy and Dr. Jurczak all expressed the view that Hansford's mental condition had lasted (or was expected to last) for a period of at least twelve months. R. 485, 487, 504, 506. Their opinions were rendered more than eighteen months after Dr. Cohen completed his examination report. R. 298-304. Thus, if the opinions of these

---

[8] The Court does not mean to suggest that Dr. Melcher's expert opinion should have been ignored by the ALJ. No report submitted by a medical professional may be regarded as "incompetent evidence." *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992). Nonetheless, Dr. Melcher's opinion cannot be properly characterized as "substantial evidence" of Hansford's work-related capabilities in light of the fact that it is contradicted by the opinions expressed by two treating sources and one consultative examiner. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008).

13

healthcare professionals were to be fully credited, the Act's twelve-month durational requirement would clearly be satisfied. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002).

At the hearing, Hansford testified that he suffered from dizzy spells. R. 31. He stated that he drove a van to make money precisely because he could not "stand on the job." R. 31. When asked by the ALJ whether a physician had attributed his dizziness to diabetes, Hansford responded in the affirmative. R. 44. He expressed the view that his dizziness was "getting worse." R. 43. In his decision, the ALJ determined that Hansford's alleged dizziness was not a medically determinable impairment, stating that Hansford had complained of it "for the first time at the hearing," and that his testimony found "no support in the objective medical evidence." R. 16. Dr. Reddy, however, clearly identified "dizziness" and "loss of balance" as symptoms that Hansford had experienced. R. 486, 505. In one questionnaire, she listed "dizziness" as a side effect of Hansford's medications. R. 506. Since Hansford's testimony concerning this symptom was supported by objective medical evidence, the ALJ was required to give serious consideration to his subjective complaints. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993).

Because the ALJ's decision contradicted the opinions of the mental health professionals who had actually evaluated Hansford and failed to properly account for Hansford's subjective complaints of dizziness, it is not "supported by substantial evidence." 42 U.S.C. § 405(g). The only remaining question is whether an immediate award of benefits is warranted, or whether a remand for further administrative proceedings is the proper remedy. A judicially-ordered award of benefits is called for only where the record of a case has been fully developed, and where the record indicates that the claimant is clearly "disabled" within the meaning of the Act. *Morales v.*

*Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). Hansford cannot satisfy that standard on the basis of the existing record.

On April 22, 2009, Murdoch reported that Hansford was refusing to adjust his medications in conformity with a recommendation from his physician. R. 441. Murdoch noted on May 13, 2009, that Hansford had been missing medical appointments that were necessary to ensure the proper administration of his medications. R. 435. In the same treatment note, Murdoch attributed Hansford's depression to his inability to find a "better job." R. 435. In order to qualify for DIB and SSI benefits under the Commissioner's regulations, a claimant must follow the treatment recommendations made by his or her physician if those recommendations would render him or her capable of engaging in substantial gainful activity. 20 C.F.R. §§ 404.1530, 416.930. Hansford testified at the hearing that he had not suffered side effects from his medications. R. 39. Nevertheless, Dr. Reddy specifically listed "dizziness" as a side effect of Hansford's medications. R. 506. Although he characterized dizziness as the "primary problem" discussed at the hearing, the ALJ never accounted for this symptom in determining Hansford's residual functional capacity. R. 16.

The Commissioner intimates that many of Hansford's medical problems are attributable to his failure to follow treatment recommendations. ECF No. 12 at 1-4. Further development of the record will facilitate a determination as to whether proper medical treatment would restore Hansford's ability to perform the duties of a full-time job. *Sharp v. Bowen*, 705 F.Supp. 1111, 1123-1125 (W.D.Pa. 1989). The notes supplied by Hansford's own therapist suggest that his condition would dramatically improve if he were to properly administer his medications and secure a "better job." R. 4435, 441. The Commissioner asserts that Dr. Cohen did not know that Hansford was still working at the time of the consultative examination. ECF No. 12 at 15. In the

15

examination report, Dr. Cohen stated that Hansford continued to "work for a bus company" but was "not currently driving." R. 302. Had he realized that Hansford was able to perform some work-related duties, Dr. Cohen may have reached different conclusions concerning Hansford's functional limitations. These issues will need to be explored on remand. Further administrative proceedings will also provide the Commissioner with an opportunity to consider the impact of Hansford's dizziness on his ability to work, and the extent to which that symptom could be alleviated by adjustments to his medication regimen. The Commissioner, of course, must afford Hansford "an opportunity to be heard" during the course of the upcoming administrative proceedings. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800-801 (3d Cir. 2010).

## VI.     Conclusion

The ALJ may be correct that Hansford is not disabled. It may be that Hansford's medical condition has been exacerbated by his unwillingness to follow medical advice; that his ability to work on a part-time basis may be indicative of an ability to perform the duties of a full-time job (20 C.F.R. §§ 404.1571, 416.971); and/or that some of his treating physicians were not aware that he was working. However, on this record, the Court cannot affirm the Commissioner's decision because the ALJ did not adequately address documentary and testimonial evidence suggesting that Hansford suffers from dizziness. R. 16, 32, 43-44, 486, 505-506. Therefore, this Court cannot determine if the ALJ adequately considered Hansford's alleged dizziness in determining his residual functional capacity. As such, the ALJ's decision is not based upon substantial evidence.

16

On remand, the Commissioner should consider all functional limitations supported by the medical record, including Hansford's dizziness, and give his reasons for accepting or rejecting Hansford's alleged functional limitations.

Accordingly, the Commissioner's motion for summary judgment (*ECF No. 11*) will be denied, and Hansford's motion for summary judgment (*ECF No. 9*) will be denied to the extent that it requests an immediate award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings. The administrative decision of the Commissioner will be vacated, and the case will be remanded to him for further proceedings consistent with this opinion. An appropriate order will follow.

_____
Arthur J. Schwab
United States District Judge

cc: All counsel of record